1  JAMES F. KEMP      (State Bar No. 033868)
   MARTIN ANDREAS    (State Bar No. 164852)
2  428 First Street East
3  P. O. Box 176
   Sonoma, CA 95476
4  Telephone 707 938-2700
   Fax 707 938-0475
5
6  Attorneys for Plaintiff, Mary L. Tuttle

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  MARY L. TUTTLE                          CASE NO.: C 07-3637 MEJ
                          Plaintiff,
12                                          **PLAINTIFF'S OPPOSITION TO**
        vs.                                 **MOTION TO DISMISS FOURTH,**
13                                          **FIFTH & SIXTH CAUSES OF ACTION**

14  CHASE INSURANCE LIFE AND
    ANNUITY COMPANY,  FEDERAL
15  KEMPER LIFE ASSURANCE CO,              Date:  August 30, 2007
16  SELECTQUOTE INSURANCE                   Time:  10:00 a.m.
    SERVICES, and DOES 1-10 .               Place:  Courtroom B, 15th Floor
17                          Defendants.
                                            Honorable Maria-Elena James
18

19

20      Plaintiff, MARY L. TUTTLE (Mary) does not oppose defendant Protective Life Insurance

21  Company's (Protective) Motion To Dismiss the Fourth Cause of Action for fraud because she has

22  been unable to locate advertisements that her husband had relied on when he purchased the insurance

23  at issue in this case.  Neither does Mary oppose the Motion To Dismiss the Sixth Cause of Action

24  based on unfair business practices as California no longer allows such actions.  Mary, however,

25  opposes the Motion To Dismiss the Fifth Cause of Action for emotional distress because the

26  relationship between an insurer and its insureds supports such a cause of action and the shabby way

27  she has been treated states a viable claim against Protective.

                              1            Plaintiff's Opposition to Motion to Dismiss

1    Mary bases her opposition on the following Memorandum of Points and Authorities, on the
2 papers, pleadings and other documents on file in this action and on oral argument to be presented at
3 the hearing on the motion.

4

5                         **MEMORANDUM OF POINTS & AUTHORITIES**

6    Protective is the successor-in-interest to Chase Insurance Life and Annuity Company (Chase)
7 and, as such, is liable for the torts of Chase.  (Protective does not deny such successor liability - it is
8 not an issue.)    On April 16, 2004, Chase issued a life insurance policy to Mary's husband, Jim Tuttle.
9 Jim paid Chase the premium it ask for and, in consideration for those payments, Chase promised Jim
10 it would pay his widow, Mary, One Hundred Thousand Dollars ($100,000.00) when he died.  Jim died
11 on October 12, 2005 and, when Mary asked for her money, rather than paying her as it had promised
12 Jim it would, it told Mary that her deceased husband, Jim, had lied in his application for the insurance
13 and kept her money.

14

15 **The Fifth Cause of Action, Protective's Motion To Dismiss and Mary's Opposition**

16    The Fifth Cause of Action.  In the Fifth Cause of Action, Mary alleges that a special
17 relationship exists between an insured and its insurer.  (Complaint 6:23.)  Mary further alleges that
18 she and her husband "reposed trust and confidence in the fidelity of the defendants and relied on the
19 good faith and integrity of defendants that they would perform the promises they made in the policy".
20 (Complaint 6:23-25)  In paragraphs 33 and 34, the complaint further alleges that Chase, and now
21 Protective, betrayed the Tuttles' trust and confidence in their fidelity and integrity by unjustifiably
22 refusing to pay policy benefits without reasonable grounds and that Chase, and now Protective, knew
23 such betrayal would subject Mary to emotional distress.  (Complaint 7:3-9.)
24    Protective's Motion To Dismiss.  Protective argues that the Fifth Cause of Action is not a
25 cause of action for emotional distress but rather a claim for breach of fiduciary duty and, because
26 there is no *truly* fiduciary relationship between an insurer and its insureds, the court must dismiss it.
27

1  (Motion 8:3-12.)  That is not the case.

2      Mary's Opposition.  The Fifth Cause of Action does not allege that a "fiduciary" relationship

3  exists between an insurer and its insureds.  It alleges that a "special" relationship exists.  It goes on to

4  allege that, in light of that special relationship, the manner in which defendants denied Mary the

5  benefits they promised Jim they would pay her was especially egregious - outrageous - and thereby

6  states a classic cause of action for emotional distress.  The special relationship between insurer and

7  insured, when coupled with defendants' betrayal of Mary and Jim's trust in their integrity, states a

8  cause of action for emotional distress.

9

10  **Argument**.

11      The Special Relationship between an Insurer and Its Insureds.  A "special" relationship exists

12  between an insurer and its insureds.  The California Supreme Court described that special relationship

13  in *Foley v. Inrteractive Data Corp*. (1988) 47 Cal.3d 654 at 684-685

14      The insurance company's obligations to their insureds are rooted in their status of
        purveyors of a vital service labeled quasi-public in nature.  Suppliers of services
15      affected with a public interest must take the public's interest seriously, where necessary
        placing it before their interest in maximizing gains and limiting disbursements. . . .
16      [A]s a supplier of a public service rather than a manufactured product, the obligations
        of insurers go beyond meeting reasonable expectations of coverage.  The obligations of
17      good faith and fair dealing encompass qualities of decency and humanity inherent in
        the responsibilities of a fiduciary[1].

18

19  Just two years earlier, in *Frommoethelydo v. Fire Ins. Exchange* (1986) 42 Cal.3d 208 at p. 215, the

20  California Supreme Court flat-out stated

21          In addition [to the duty of good faith and fair dealing] an insurer holds itself out
        as a fiduciary. With the public trust must go private responsibility consonant with the
22      trust, including qualities of decency and humanity inherent in the responsibilities of a
        fiduciary.
23

24
        [1]In *Foley*, the Supreme Court refused to extend tort remedies and tort damages for breach of the covenant of good
25  faith the law implies in every contract from insurance contracts to employment contracts because the employment
    relationship does not come up to the high standards of the insurance relationship.  Protective's assault on *Foley* is part of
26  the insurance industry's relentless efforts to neutralize the Court's characterization of the quasi fiduciary relationship
    between an insurer and its insureds.  Those efforts have had some success in some trial courts and some intermediate
27  courts of appeal but the Supreme Court has never filed a retraction.

1  And eleven years later, in *Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, at p. 44,

2  citing *Foley* with approval, the court stated

> As our decisions acknowledge, tort recovery in this particular context is considered
> appropriate for a variety of policy reasons. Unlike most other contracts for goods or
> services, an insurance policy is characterized by elements of adhesion, public interest and
> fiduciary responsibility... . In general, insurance policies are not purchased for profit or
> advantage; rather, they are obtained for peace of mind and security in the event of an
> accident or other catastrophe.

7  That special relationship heightens the reciprocal duties between the parties and thus raises the

8  standards of care breach of which gives rise to a cause of action for emotional distress damages. In an

9  ordinary garden-variety situation, conduct that may not be egregious enough to give rise to a cause of

10  action for emotional distress will, within the special relationship between an insurer and its insureds,

11  be sufficiently egregious to support such an action.

12  To allege a cause of action for intentional infliction of emotional distress, Mary must allege

13  outrageous conduct by Chase in reckless disregard of the likelihood that emotional distress would

14  result. *Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903. Furthermore, although there is no

15  tort known as "negligent infliction of emotion distress", Mary can recover such damages as the direct

16  victim of negligent conduct because of the special relationship between Mary and the insurer

17  defendants. *Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1073.

18  The Allegations of the Fifth Cause of Action. The allegations of the Fifth Cause of Action are

19  sufficient to satisfy the requirements of both intentional infliction of emotional distress and a direct

20  victim's action for negligence by one with a special relationship to the victim. The cause of action

21  alleges that after Jim died, Mary went to Chase and asked for the benefits it had promised Jim it

22  would pay Mary to help provide for her financial needs after his death. Rather than honoring its

23  promise, Chase told Mary that they would pay her nothing[2]  because her recently deceased, beloved,

24  husband had lied, he was a fraud. That is a shameful, uncivilized, way to treat a widow. It's

25

26

27  [2]Chase offered to return the premiums Jim had paid but that was only because of a legal necessity. The point is
Chase told Mary that she gets nothing from the policy because her husband was a liar.

4                    Plaintiff's Opposition to Motion to Dismiss

1  outrageous.  It is far more flagrant than the situation in *Fletcher v. Western National Life Ins. Co.*

2  (1970) 10 Cal.App.3d 376.  The *Fletcher* Court found that an insurer acted outrageously when,

3  without a reasonable basis, it falsely accused a disabled insured whom the insurer knew was in

4  desperate financial straits of concealing a congenital ailment on his insurance application and tendered

5  a small amount to the insured in an attempt to coerce him into surrendering the policy.  (See 10

6  Cal.App.3d 391-392.)

7

8  **Conclusion**.

9        The Fifth Cause of Action alleges facts sufficient to state a claim for emotional distress.  Mary

10  therefore respectfully asks the court to deny Protective's motion to dismiss the Fifth Cause of Action.

11  The cause of action is not only important with regard to damages, it also has important significance

12  for evidence, jury instructions and argument at trial.

13

14  DATED: August 8, 2007.

15

16                                                        /s/_____

                                                              James F. Kemp
17                                                      Attorney for Plaintiff  Mary L. Tuttle

18

19

20

21

22

23

24

25

26

27