Linda B. Oliver (SBN 166720)
loliver@reedsmith.com
Eugenia S. Chern (SBN 215092)
echern@reedsmith.com
Jessica M. Perry (SBN 244932)
jperry@reedsmith.com
REED SMITH LLP
1999 Harrison Street, Suite 2400
Oakland, CA 94612-3572

**Mailing Address:**
P.O. Box 2084
Oakland, CA 94604-2084

Telephone:   510.763.2000
Facsimile:   510.273.8832

Attorneys for Defendant Protective Life
Insurance Company, successor-in-interest to
Chase Insurance Life and Annuity Company,
formerly known as Federal Kemper Life
Assurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY L. TUTTLE,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CHASE INSURANCE LIFE AND ANNUITY COMPANY, FEDERAL KEMPER LIFE ASSURANCE CO., SELECTQUOTE INSURANCE SERVICES, and DOES 1-10,<br><br>　　　　　Defendants. | Case No. C 07-03637 SI<br><br>**FURTHER JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date:　　　　March 14, 2008<br>Time:　　　　2:30 p.m.<br>Courtroom:　　10, 19th Floor<br><br>Honorable Susan Illston |

Pursuant to Court's Pretrial Preparation Order filed on November 15, 2007, the parties to the above-entitled action, plaintiff Mary L. Tuttle ("Tuttle") and defendant Protective Life Insurance Company, successor-in-interest to Chase Insurance Life and Annuity Company, formerly known as Federal Kemper Life Assurance Company ("Protective Life"), submit this Further Joint Case Management Statement as follows:

/ / /

/ / /

**1.     Jurisdiction and Service.**

This action is within the original jurisdiction of this Court based on diversity of citizenship and amount in controversy pursuant to 28 U.S.C. Sections 1332 and 1441. Originally, Tuttle also named as a defendant SelectQuote Insurance Services ("SelectQuote"), and alleged that Selectquote is an insurance agency with its principal place of business in California. An informal exchange of information between Tuttle and SelectQuote satisfied Tuttle that there was factual basis for her causes of action against SelectQuote, so she dismissed the action as to SelectQuote. Accordingly, there is complete diversity between plaintiff and the remaining defendant. Protective Life filed an Answer to Tuttle's First Amended Complaint on October 18, 2007. No other party remains to be served.

**2.     Facts.**

a.     <u>Chronology</u>. Plaintiff Mary Tuttle contends that in 2004, she and her husband, James Tuttle decided it would be prudent to get more insurance on Jim's life, because they had a $50,000.00 policy but wanted more. She contends that they shopped around and found that Federal Kemper Life Assurance Company ("Federal Kemper") offered the best deal on a $100,000.00 policy.[1]

On March 27, 2004, James Tuttle submitted to Federal Kemper an application for a $100,000.00 policy on his life with Mary as beneficiary. Federal Kemper issued policy number FK3395030 ("the Policy") on April 16, 2004. Jim and Mary paid the premiums on the policy and let the previous policy lapse.

Jim died on October 12, 2005 and, after an investigation, on January 19, 2007, Protective denied the claim. In its denial letter, Protective stated that it was rescinding the Policy on the grounds that Jim had misrepresented or withheld material facts in his application, and that if the true facts had been revealed at the time of the application, it would not have issued the Policy. It tendered a refund of the premiums, but Tuttle refused the tender as she claims her husband truthfully

---

[1] Federal Kemper Life Assurance Company, later became known as Chase Insurance Life and Annuity Company (Chase Insurance), and then merged into Protective Life Insurance Company ("Protective") in 2007.

provided all the information the application asked for. That is the key issue: are there grounds for rescission?

    b. <u>Factual Disputes</u>. The issue revolves around three questions in the application and Jim's answers to them: 1) Jim answered, "no" to a question asking "have you ever received or have you ever been advised to seek counseling for alcohol or drug abuse?"; 2) he also answered "no" in response to a question asking "Have you ever used heroin, cocaine (including crack) LSD, PCP, any derivative of these drugs, or any other controlled substance except as prescribed by a physician?"; and 3) he answered "yes" in response to a question asking "Have you ever had or have you ever been treated for: chest pain, high blood pressure, stroke, diabetes, cancer, a disease or disorder of the heart, lungs, digestive or genitourinary system, or a mental or nervous disorder?". On this third question, Protective claims Jim did not provide any details in the explanation section regarding a diagnosis of depression.

    On the first question at issue, Protective claims that Jim's medical records show that Jim was an alcoholic who consumed a 12-pack of beer a day, and had tried many programs in an attempt to quit, and had been counseled to reduce his consumption of alcohol. Tuttle admits that Jim was a 12-pack-a-day-man and that he had wanted to quit and had done so for a few short periods, but claims that Jim had never received or been advised to seek counseling for alcohol abuse.

    On the second question, Protective claims that Jim's medical records show that he smoked marijuana regularly. Tuttle claims that there is no evidence to show that Jim used marijuana and, further, argues that the application did not ask if he used it.

    Tuttle claims that the third question raises a much more ambiguous and uncertain factual dispute and it will require further clarification as discovery proceeds. Protective contends that the medical records clearly reveal a diagnosis of depression.

    **3.**    **Legal Issues.**

    a.    Whether Protective Life was entitled to rescind the Policy based upon material misrepresentations on Mr. Tuttle's application for life insurance. Insurance Code Section 331 provides that "concealment, whether intentional or unintentional, entitles the injured party to rescind insurance." Concealment is defined in Insurance Code Section 330 as "[n]eglect to communicate

that which a party knows, and ought to communicate." In addition, Insurance Code Section 332 further states that "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining." Under California law, "[t]hree factors are reviewed in determining whether an insurance company has the right to rescind a policy, which are: (1) that the applicant made a misrepresentation; (2) that the misrepresentation was material; and (3) that the applicant knew that he made a material misrepresentation." *Casey v. Old Line Life Ins. Co. of America (Carrel)*, 996 F. Supp. 939, 944 (N.D. Cal. 1998); *O'Riordan v. Federal Kemper Life Assurance*, 36 Cal. 4th 281 (2005). As explained in *West Coast Life Insurance Company v. Ward*, 132 Cal. App. 4th 181, 187 (2005): "The rule in insurance cases is that a material misrepresentation or concealment in an insurance application, whether intentional or unintentional, entitles the insurer to rescind the insurance policy *ab initio*."

    b.    Whether Protective's decision to deny Mrs. Tuttle's claim for benefits under the Policy was reasonable. To be liable in tort, the withholding of policy benefits due the insured must be unreasonable. See *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 574 (1973). The existence of a genuine dispute as to legal liability precludes extracontractual recovery against an insurer for tortious breach or bad faith as a matter of law. *Opsal v. United Services Auto Assn.*, 2 Cal. App. 4th 1197 (1991).

    c.    Whether Protective's denial of Tuttle's claim warrants imposition of punitive damages. California Code of Civil Procedure Section 3294 provides for an award of punitive and exemplary damages if evidence establishes that defendant has acted with oppression, fraud or malice, which includes a conscious and willful disregard of plaintiff's rights. Where the insurer has acted with a conscious and willful disregard of the insured's rights under the insurance policy, the insurer may also be liable for punitive and exemplary damages. *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d. 809 (1979); *Tibbs v. Great American Ins. Co.*, 755 F.2d 1370, 1375 (9th Cir. 1985). Protective contends there is no evidence of oppression, fraud or malice in this case.

    d.    Perhaps, Protective's liability for tort, including punitive, damages as successor-in-interest. According to plaintiff, that depends on the manner in which Protective succeeded to Chase.

**4. Motions.**

Protective intends to file a motion for summary judgment after the parties exchange documents and it has the opportunity to depose Mary Tuttle and Mr. Tuttle's physicians.

**5. Amendment of Pleadings.**

No further amendment of the pleadings is anticipated.

**6. Evidence Preservation.**

Defendant has preserved all records relating to the Policy and Ms. Tuttle's claim in its possession at the time the lawsuit was served.

**7. Disclosures.**

Protective served its initial disclosures on October 18, 2007. Plaintiff served her initial disclosures on October 18, 2007.

**8. Discovery.**

Both plaintiff and Protective have served written discovery. Protective's counsel is in the process of meeting and conferring with plaintiff's counsel regarding plaintiff's discovery responses. Protective's responses to plaintiff's discovery is due on March 14, 2008. After this written discovery is completed, Protective anticipates taking the depositions of Mary Tuttle and Mr. Tuttle's physicians by the discovery cut-off deadlines set by the Court.

Tuttle intends to serve written discovery and depose the appropriate persons identified in responses. As well as initial underwriting and post claim underwriting – investigating - Tuttle's discovery will include Protective's and its predecessor's histories with regard to claims made on life insurance policies within the two year contestability time and information on the succession of the defendants as it relates to successor liability.

**9. Class Actions.**

Not applicable.

**10. Related Cases.**

None.

/ / / /

/ / / /

**11.  Relief.**

Tuttle's complaint seeks damages for breach of contract, bad faith, misrepresentation, negligent/ intentional infliction of emotional distress, punitive damages, and attorneys' fees and costs.

**12.  Settlement and ADR.**

The parties participated in mediation on January 24, 2008, but were unable to reach a settlement.

**13.  Consent to Magistrate Judge for All Purposes.**

The parties do not consent to the assignment to a magistrate judge for all purposes. Protective filed its Declination to Proceed Before Magistrate Judge on July 23, 2007.

**14.  Other References.**

None.

**15.  Narrowing of Issues.**

None.

**16.  Expedited Schedule.**

Not applicable.

**17.  Scheduling.**

The Court has issued a Pretrial Preparation Order filed on November 15, 2007, which will govern the scheduling of this case.

**18.  Trial.**

Pursuant to the Pretrial Preparation Order, the Court has set this case for jury trial on November 3, 2008 at 8:30 a.m. The parties expect that the trial will last ten days due to the number of medical witnesses.

**19.  Disclosure of Non-party Interested Entities or Persons.**

Protective filed its Disclosure of Non-Party Interested Entities pursuant to Civil L.R. 3-16. Defendant Protective Life Insurance Company, successor-in-interest to Chase Insurance Life and Annuity Company, formerly known as Federal Kemper Life Assurance Company, certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent

1  corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a
2  party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that
3  could be substantially affected by the outcome of this proceeding:
4      Federal Kemper Life Assurance Company ("Federal Kemper") was formerly owned by
5  Zurich Life. Bank One purchased Zurich Life in September 2003. In July 2004, JP Morgan Chase
6  purchased Bank One and created Chase insurance companies, at which time Federal Kemper was re-
7  named Chase Insurance Life and Annuity Company ("Chase Insurance"). Protective purchased
8  Chase Insurance in July 2006. Chase Insurance merged into Protective in April 2007. Protective
9  Life Insurance Company is wholly owned by Protective Life Corporation, a publicly held
10 corporation.

11
12 DATED: March 5, 2008.           KEMP & KEMP
13
14                                 By _____
                                      James F. Kemp
15                                    Attorney for Plaintiff Mary L. Tuttle
16 DATED: March 5, 2008.
17                                 REED SMITH LLP
18
19                                 By _____
                                      Linda B. Oliver
20                                    Eugenia S. Chern
                                      Jessica M. Perry
21                                    Attorneys for Defendant and Cross-Complainant
                                      Protective Life Insurance Company, successor-in-
22                                    interest to Chase Insurance Life and Annuity
                                      Company, formerly known as Federal Kemper Life
23                                    Assurance Company

27 DOCSOAK-9901726.1

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

—7—
FURTHER JOINT CASE MANAGEMENT CONFERENCE STATEMENT